1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  KYLE NIKI SHAFFER
   Deputy Attorney General
5  JANELLE MARIE BOUSTANY
   State Bar No. 73325
6  Deputy Attorney General
    110 West A Street, Suite 1100
7   San Diego, CA 92101
    P.O. Box 85266
8   San Diego, CA 92186-5266
    Telephone: (619) 645-2292
9   Fax: (619) 645-2271
    Email: Janelle.Boustany@doj.ca.gov
10
   Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CARLOS CORONA,** | 07CV2117 BTM (NLS) |
| Petitioner and Appellant, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| **V. M. ALMAGER, Warden**, | |
| Respondent. | |

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GARY W. SCHONS
Senior Assistant Attorney General
KYLE NIKI SHAFFER
Deputy Attorney General
JANELLE MARIE BOUSTANY
State Bar No. 73325
Deputy Attorney General
 110 West A Street, Suite 1100
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone: (619) 645-2292
 Fax: (619) 645-2271
 Email: Janelle.Boustany@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CARLOS CORONA,** <br><br> Petitioner and Appellant, <br><br> v. <br><br> **V. M. ALMAGER,** <br><br> Respondent. | 07CV2117 BTM (NLS) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |

**THE PETITION FOR WRIT OF HABEAS CORPUS SHOULD BE DENIED WITH PREJUDICE BECAUSE THE STATE COURTS' ADJUDICATIONS OF PETITIONER'S CLAIMS WERE CONSISTENT WITH, AND REASONABLE APPLICATION OF, DECISIONAL LAW AS ANNOUNCED BY THE UNITED STATES SUPREME COURT AND THE FACTS PRESENTED**

Petitioner attacks the constitutional validity of his criminal judgment by raising two claims. The entire factual and procedural histories of Petitioner's case are summarized here. The supporting documents, including copies of the state court record, are being lodged contemporaneously with this Answer and accompanying Memorandum of Points and Authorities. This Court should find there is no basis for granting habeas relief.

**A.     The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)**

The AEDPA amended 28 U.S.C. § 2254(d)[1] to provide that habeas corpus relief may not be granted for any claim adjudicated on the merits in the state courts unless the state adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court (§2254(d)(1)), or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding (§ 2254(d)(2)). The AEDPA, a congressional act that clearly tightened the federal courts' habeas review powers concerning the actions of state courts in final state criminal judgments, is controlling in this Court's disposition of the claims raised in the Petition. See e.g., *Williams v. Taylor*, 529 U.S.362, 405-06, 120 S. Ct. 1495,146 L. Ed. 2d 389 (2000); *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002).

A state court's decision is "contrary to" the clearly established precedent of the United States Supreme Court if the state court applies a rule that contradicts the governing law set forth in the high court's cases, or if the state court confronts a set of facts that are materially indistinguishable from a decision of the high court but arrives at a result different from the Court's precedent. *Williams v. Taylor*, 529 U.S. at 405-06; see also *Bell v. Cone*, 535 U.S. at 604; *Early v. Packer*, 537 U.S. 3, 7-8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002). A state court's decision involves an unreasonable application of United States Supreme Court precedent if the state court applies the

---

1. 28 U.S.C. § 2254(d) states:

   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or;

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

precedent to the facts in an objectively unreasonable manner. *Williams v. Taylor*, 529 U.S. at 405; *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam).

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application also is objectively unreasonable. *Bell v. Cone*, 535 U.S. at 694; *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) (per curiam). As the United States Supreme Court has emphasized, where the state court's application of a governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable. *Wiggins v Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003); *Woodford v. Visciotti*, 537 U.S. at 24-25. State court decisions must be given "the benefit of the doubt." *Id.* at 24. A readiness to attribute error "is inconsistent with the presumption that state courts know and follow the law." *Id.*

The range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. *Yarborough v. Alvarado,* 541 U.S. 652, 657, 124 S. Ct. 2140, 158 L. Ed. 2d 938, 951 (2004).

When the California Supreme Court has summarily denied a claim, without giving a rationale, this is considered a denial "on the merits" and is presumed to rest on grounds articulated by a lower court in its written opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). Thus, a reviewing court may "look through" the unexplained summary denial and apply the deferential standard of review required by 28 U.S.C. § 2254(d) to the lower state court's reasoned decision. The last reasoned decision in this case is the California Court of Appeal's decision. (Lodgment 7.)

///

///

**B.  The Procedural History of The Case**

In an amended indictment the San Diego County Grand Jury alleged that on August 14, 2003, Petitioner attempted to murder Kenneth Guytan,[2] in violation of California Penal Code §§187(a) and 664, personally used and discharged a handgun, causing great bodily injury, within the meanings of California Penal Code § 12022.53(b), (c) and (d), and did so for the benefit of a street gang, within the meaning of California Penal Code §186.22, subdivision (b)(1); and the indictment alleged Petitioner had a "prison prior" conviction, within the meaning of California Penal Code § 667.5(b). (1 CT 16-17, 50, 2 CT 436; 1 RT 1-2.)[3]

Petitioner's jury trial commenced on June 13, 2005. (2 CT 442.) On June 23, 2005, the jury found Petitioner guilty as charged and found the special allegations true. Petitioner admitted he had a "prison prior" conviction. (2 CT 452-457.)

On October 21, 2005, the court sentenced Petitioner to prison for a total term of 42 years to life. (2 CT 409-411, 459.)

On October 20, 2006, the California Court of Appeal affirmed the judgment. (Lodgment 7.) Petitioner filed a petition for review in the California Supreme Court. (Lodgment 8.) The California Supreme Court denied review on January 3, 2007. (Lodgment 9.) Petitioner filed the instant Petition in this Court on November 5, 2007.

**C.  The Facts**

On August 14, 2003, Petitioner shot Kenneth Guyton five times. (3 RT 462-466.) When the National City police arrived, Guyton pleaded that he did not want to die. (1 RT 157-158.) After extensive surgery and hospitalization, Guyton survived. (3 RT 462-468.) He identified Petitioner as the shooter, a man he had known for years. Petitioner was known as "L'il Man" from the National City Locos gang. (2 RT 243-244, 254, 317-318, 3 RT 547-548.) The motive for the shooting involved gangs and drugs. An expert was of the opinion the shooting was done for the

---

2. The victim's name is spelled "Guyton." (2 RT 201.)

3. "CT" refers to the clerk's transcripts (Lodgment 1); "RT" refers to the reporter's transcripts (Lodgment 2).

benefit of the Mexican Mafia.  (3 RT 481.)[4/]

**D.    The Petition Should Be Denied With Prejudice**

    **1.    The *Wheeler-Batson*[5/] Claim**

Petitioner claims there was *Wheeler-Batson* error in the jury selection.  He contends the state trial court erroneously denied his motion alleging the prosecutor used racial bias during jury selection in exercising two peremptory challenges against African-Americans. (Petition at 7-8.) The California Court of Appeal addressed this issue in detail and concluded there was no error. (Lodgment 7 at 4-18.) The California Court of Appeal's adjudication of the claim is consistent with, and a reasonable application of, constitutional law as determined by the United States Supreme Court.

The focus of Petitioner's complaint is with regard to two potential jurors who were eliminated from service by the prosecutor's exercise of peremptory challenges: George Ochaka and Edmund Osborne.  (2 ART 44.)[6/]  George Ochaka was single with no children.  Employed in manufacturing, he had no prior jury duty, and no friends in law enforcement or the legal profession. (2 ART 44.)  The trial court specifically noted Ochaka was difficult to understand.  (1 RT 54.)  He appeared to be of African descent and had a thick accent that prevented the trial court from understanding him.  (1 RT 58.)

Edmund Osborne was employed as a senior custodian at a college and was married to a woman employed at the same college as a personnel assistant. His two children were employed, one at a department store and the other at a community college. He had two cousins in law enforcement, both deceased, and another cousin was a detective in the Chicago Police Department. (2 ART 44.) Three of his cousins had been homicide victims some ten years earlier, but no charges had been filed

---

    4. The California Court of Appeal opinion contains a more detailed summary of the facts. (Lodgment 7 at 2-4.)

    5. The case references are to *People v. Wheeler*, 22 Cal. 3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978) (*Wheeler*) and *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed.2d 69 (1986) (*Batson*).

    6. "ART" refers to the augmented reporter's transcript (Lodgment 3).

1  due to insufficient evidence. (2 ART 68-69.) Osborne had two cousins in the Crips. Gang activity
2  in his mother's neighborhood caused her to sell her home. (2 ART 85.)

3        The trial court denied the *Batson/Wheeler* motion without asking the prosecutor to state
4  reasons for exercising his peremptory challenges. (1 RT 54, 62.) The court found, as noted, that
5  Ochaka was difficult to understand and probably did not understand English "to the extent we are
6  going to need it in this case based upon what I believe to be the potential evidence...." (1 RT 54.)
7  With regard to Osborne, the court noted he had family members in law enforcement and some were
8  victims of crimes. (1 RT 54.)

9        The California and federal constitutions bar the use of peremptory challenges to remove
10 prospective jurors based solely on group bias. *Batson*, 476 U.S. at 89; *Wheeler*, 22 Cal. 3d at
11 276-77. The United States Supreme Court recently reaffirmed that *Batson* states the procedure and
12 standard to be employed by trial courts when challenges such as Petitioner's are made. First, the
13 defendant must make out a prima facie case by showing that the totality of the relevant facts gives
14 rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima
15 facie case, the burden shifts to the State to explain adequately the racial exclusion by offering
16 permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered,
17 the trial court must then decide whether the opponent of the strike has proved purposeful racial
18 discrimination. *Johnson v. California*, 545 U.S. 162, 168, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005)
19 (*Johnson* ).[7]

20       The United States Supreme Court stated in *Batson* that "the trial judge's findings in the
21 context under consideration here largely will turn on evaluation of credibility," and for that reason
22 "a reviewing court ordinarily should give those findings great deference." *Batson*, 476 U.S. at 98,
23 n. 21.

24       The California Court of Appeal addressed the claim in detail. It first described the
25 background of the jury selection process, focusing on the two prospective jurors who were the

---

28    7. The trial court read and considered the then-recent decision from the United States Supreme Court in *Johnson*. (1 RT 56-57.)

07CV2117

6

1  subjects of the matter. (Lodgment 7 at 5-9.) It then discussed the governing legal principles, including the United States Supreme Court decisions in *Batson* and *Johnson*. (Lodgment 7 at 9-12.) In its analysis, the appellate court explained how it reached the conclusion the record supported the trial court's finding there was no prima facie showing of discriminatory purpose. The court found the trial court could reasonably find there were obvious race-neutral reasons applicable to each of the jurors that precluded an inference of discriminatory purpose. It noted that Edmund Osborne had family members who were in gangs, and the trial involved a defendant gang member. (Lodgment 7 at 13-14.) Also, three of Osborne's cousins had been murdered and law enforcement had failed to prosecute the perpetrators. The appellate court found that the trial court "could reasonably conclude these factors showed that any prosecutor would naturally want to exclude Osborne on the possibility he would be sympathetic to the gang member defendant and unsympathetic to prosecuting authorities." (Lodgment 7 at 14.)

With regard to Ochaka, the appellate court noted the trial judge had stated he had difficulty understanding him, and, given the "need for jurors to listen to oral testimony from a variety of witnesses and to deliberate with each other as a group," the trial court could reasonably conclude that a juror whose English was difficult to understand "evinced a potential language difficulty that conclusively established a race-neutral justification for a peremptory challenge." (Lodgment 7 at 14.)

The appellate court went on to discuss other concerns of Petitioner, and then concluded that the trial court had made a "sincere and reasoned effort to evaluate whether the peremptory challenges were exercised for race-neutral reasons," and there was "substantial evidence to support the trial court's finding of no discriminatory purpose." (Lodgment 7 at 18.)

The record clearly shows there were genuine race-neutral reasons for the prosecutor's use of peremptory challenges against Ochaka and Osborne. As the United States Supreme Court has noted, the evaluation of a prosecutor's reasons for excluding jurors must be made in the context of the facts of the particular case. *Batson*, 476 U.S. at 98, n. 20. In Petitioner's case, there were neutral explanations related to the particular case to be tried. *Id.* at 98.

The California Court of Appeal properly adjudicated this claim. The adjudication was

consistent with the principles announced in *Batson* and reiterated in *Johnson*. Therefore, there is no basis for granting habeas relief on this claim.

### 2. The Claim Regarding Delfina Miller

Petitioner contends the trial court prejudicially erred in refusing to grant a continuance in order to allow him to call Delfina Miller as a witness, who assertedly would have testified that she saw a man running away from the scene of the shooting and entering an automobile that did not match the description given by the victim. (Petition at 8, 10.) Habeas relief should be denied.

The California Court of Appeal rejected this claim of error in an exhaustive analysis. The linchpin of its ultimate conclusion was that the defense had not exercised due diligence in attempting to locate Delfina Miller. (Lodgment 7 at 29.) The California Court of Appeal first described background information about the efforts the defense had made to find Delfina Miller, who had moved to Arizona by the time of the trial. It found that the prosecution did not breach a duty to inform the defense of the whereabouts of Delfina Miller. Significantly, it found the trial court did not abuse its discretion in denying a midtrial continuance because there was a lack of diligence by the defense. Finally, it concluded there was no basis for ordering a new trial to allow for the testimony of Miller. (Lodgment 7 at 19-30.)[8]

Petitioner does not fault the ultimate adjudication by the California Court of Appeal. He does not assert it is contrary to settled federal constitutional law. Rather, he asks this Court to consider the scope of the prosecution's duty to provide information about witnesses. (Petition at

---

8. The appellate court did not evaluate the trial court's finding at the new trial motion proceeding that the absence of Delfina Miller's testimony did not cause prejudice. (Lodgment 7 at 30.) It noted that she lived near the shooting; she jumped out of bed after hearing three gunshots; and she saw a man, who appeared to come from the same area as the shots, run past the front of her house. She saw a man lying on the street and a white car leaving the scene driving the wrong way down the street. (Lodgment 7 at 19-20.) The defense believed Miller was an important impeachment witness because her description of the white vehicle at the scene was different from the black vehicle described by Guyton. (Lodgment 7 at 20.) The trial court concluded that, although Miller's testimony might have been beneficial to the defense as "fodder for argument," it would not have altered the outcome because the victim/witness was extremely credible. (Lodgment 7 at 25.)

07CV2117

8

10.) Citing Ninth Circuit law,[9] the California Court of Appeal in this case noted there is generally no "*Brady*[10] violation when the government fails to provide information "that it does not know about" and there is no unlawful suppression of evidence if the prosecution gives the defendant all the information necessary for the defendant to discover the alleged *Brady* material on his or her own. (Lodgment 7 at 26.) This case is not the proper vehicle for expounding on this issue, and even if it were, the Ninth Circuit has settled the law against Petitioner. Moreover, the facts are against Petitioner as well. As the California Court of Appeal noted, the prosecution did not know that the Millers had moved until shortly before trial, and did not know that Petitioner was having trouble locating Delfina Miller. Thus, the prosecution did not suppress any information about Delfina Miller in its possession nor attempt to mislead Petitioner about her whereabouts. (Lodgment 7 at 27.)

As noted, Petitioner does not explain how the California Court of Appeal's adjudication was inconsistent with, or an unreasonable application of, United States Supreme Court law. Importantly, Petitioner does not argue about the California Court of Appeal's conclusion he failed to exercise due diligence in finding Delfina Miller. As the appellate court explained, the prosecution provided Petitioner with the address it had for Delfina Miller, and Petitioner had six months before trial to verify if the address was correct and to research a new address. (Lodgment 7 at 27.) The appellate court found that the trial court was reasonable in concluding that the defense should have taken other investigative measures once it discovered that visits to the residence over a four-month period were not fruitful, and that a database search finally conducted in May of 2005 should have been more extensive. The California Court of Appeal found that the trial court was justified in concluding that a one-month delay of the trial to secure the out-of-state subpoena was unreasonable

---

9. The appellate court cited *United States v. Chen Hsieh Hui Mei*, 754 F.2d 817, 824 (9th Cir. 1985), and *United States v. Bracy*, 67 F.3d 1421, 1428-1429 (9th Cir. 1995).

10. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Under *Brady*, the government has an obligation to disclose material information that is favorable to the defense. *Id*. at 87.

1  in light of the lengthy period of time that the defense had to find Miller after disclosure of her
2  identity and address and before the commencement of the trial. (Lodgment 7 at 27.) Petitioner's
3  lack of diligence was dispositive on the issue of whether there should have been a continuance, and
4  it was also dispositive on the issue of whether there was an abuse of discretion in denying the motion
5  for a new trial.

6       A trial court has broad discretion in deciding whether or not to grant a continuance.
7  *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983). The facts and
8  circumstances of the particular case weigh heavily in deciding whether the failure to grant a
9  continuance was an abuse of discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L.
10 Ed. 2d 921 (1964). No mechanical tests exist for deciding when a denial of a motion for a
11 continuance is so arbitrary as to violate due process, so the answer lies "in the circumstances present
12 in every case, particularly in the reasons presented to the trial judge at the time the request is
13 denied." *Id*. at 590. In California, to support a continuance motion to secure a witness's attendance
14 at trial, a showing of good cause requires a demonstration, among other things, that the defendant
15 exercised due diligence to secure the witness's attendance. *People v. Jenkins*, 22 Cal. 4th 900, 1037,
16 95 Cal. Rptr. 2d 377, 997 P.2d 1044 (2000).

17      Respondent submits the California Court of Appeal's adjudication of the issue concerning
18 Delfina Miller was not inconsistent with, or an unreasonable application of, Supreme Court
19 authority. The California Court of Appeal correctly found that Petitioner failed to exercise due
20 diligence to secure Delfina Miller's attendance. The law and the facts support the appellate court's
21 findings and conclusions. There is no United States Supreme Court authority that undercuts the
22 conclusions the California Court of Appeal made in this case. Therefore, this issue does not provide
23 a means for granting habeas relief.

24
25
26
27
28

**CONCLUSION**

The Petition should be denied.

Dated: February 25, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GARY W. SCHONS
Senior Assistant Attorney General

KYLE NIKI SHAFFER
Deputy Attorney General


s/Janelle M. Boustany
JANELLE MARIE BOUSTANY
Deputy Attorney General

Attorneys for Respondent

JMB:jr
80208591.wpd
SD2008700041

07CV2117

11

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| | THE PETITION FOR WRIT OF HABEAS CORPUS SHOULD BE DENIED WITH PREJUDICE BECAUSE THE STATE COURTS' ADJUDICATIONS OF PETITIONER'S CLAIMS WERE CONSISTENT WITH, AND REASONABLE APPLICATION OF, DECISIONAL LAW AS ANNOUNCED BY THE UNITED STATES SUPREME COURT AND THE FACTS PRESENTED | 1 |
| A. | The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) | 2 |
| B. | The Procedural History of The Case | 4 |
| C. | The Facts | 4 |
| D. | The Petition Should Be Denied With Prejudice | 5 |
| | 1.  The *Wheeler-Batson* Claim | 5 |
| | 2.  The Claim Regarding Delfina Miller | 8 |
| CONCLUSION | | 11 |

**TABLE OF AUTHORITIES**

                                                                                                        **Page**

**Cases**

*Batson v. Kentucky*
476 U.S. 79
106 S. Ct. 1712
90 L. Ed.2d 69  (1986) ............ 5-7

*Bell v. Cone*
535 U.S. 685
122 S. Ct. 1843
152 L. Ed. 2d 914 (2002) ............ 2, 3

*Brady v. Maryland*
373 U.S. 83
83 S. Ct. 1194
10 L. Ed. 2d 215 (1963) ............ 9

*Early v. Packer*
537 U.S. 3
123 S. Ct. 362
154 L. Ed. 2d 263 (2002) ............ 2

*Johnson v. California*
545 U.S. 162
125 S. Ct. 2410
162 L. Ed. 2d 129 (2005) ............ 6

*Lockyer v. Andrade*
538 U.S. 63
123 S. Ct. 1166
155 L. Ed. 2d 144 (2003) ............ 3

*Morris v. Slappy*
461 U.S. 1
103 S. Ct. 1610
75 L. Ed. 2d 610 (1983) ............ 10

*People v. Jenkins*
22 Cal. 4th 900
95 Cal. Rptr. 2d 377
997 P.2d 1044 (2000) ............ 10

*People v. Wheeler*
22 Cal. 3d 258
148 Cal. Rptr. 890
583 P.2d 748 (1978) ............ 5, 6

**TABLE OF AUTHORITIES (continued)**

**Page**

*Ungar v. Sarafite*
376 U.S. 575
84 S. Ct. 841
11 L. Ed. 2d 921 (1964) ... 10

*United States v. Bracy*
67 F.3d 1421 (9th Cir. 1995) ... 8

*United States v. Chen Hsieh Hui Mei*
754 F.2d 817 (9th Cir. 1985) ... 8

*Wiggins v Smith*
539 U.S. 510
123 S. Ct. 2527
156 L. Ed. 2d 471 (2003) ... 3

*Williams v. Taylor*
529 U.S.362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000) ... 2, 3

*Woodford v. Visciotti*
537 U.S. 19
123 S. Ct. 357
154 L. Ed. 2d 279 (2002) ... 3

*Yarborough v. Alvarado*
541 U.S. 652
124 S. Ct. 2140
158 L. Ed. 2d 938 (2004) ... 3

*Yarborough v. Gentry*
540 U.S. 1
124 S. Ct. 1
157 L. Ed. 2d 1 (2003) ... 3

*Ylst v. Nunnemaker*
501 U.S. 797
111 S. Ct. 2590
115 L. Ed. 2d 706 (1991) ... 3

07CV2117

**TABLE OF AUTHORITIES  (continued)**

**Page**

**Statutes**

Antiterrorism and Effective Death Penalty Act ("AEDPA")
Pub L. No. 104-132, 110 Stat. 1214 (1996)   2

California Penal Code
   §186.22, subd. (b)(1)   4
   §187(a)   4
   § 664   4
   § 667.5(b)   4
   § 12022.53(b), (c) and (d)   4

Title 28 United States Code
   § 2254(d)   3
   § 2254(d)(1)   2
   § 2254(d)(2)   2