1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 | CARLOS CORONA,

12 | Petitioner,

13 | vs.

14

15

16 | V. M. ALMAGER, Warden, et al.,

17 | Respondents.

18

Civil No. 07cv2117-BTM (NLS)

**ORDER:**

**(1) ADOPTING IN PART AND DECLINING TO ADOPT IN PART THE FINDINGS AND CONCLUSIONS OF UNITED STATES MAGISTRATE JUDGE;**

**(2) DENYING PETITION FOR A WRIT OF HABEAS CORPUS; AND**

**(3) ISSUING A CERTIFICATE OF APPEALABILITY**

19    Petitioner is a California prisoner proceeding pro se and in forma pauperis with a Petition

20 for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Petitioner was

21 convicted of attempted murder while personally using a handgun and acting for the benefit of

22 a street gang, and was sentenced to 42 years-to-life in state prison.  He claims the prosecutor

23 acted with a racially discriminatory purpose when exercising peremptory challenges to remove

24 the only two African-American prospective jurors from his jury venire (Claim One), and that he

25 was denied the right to secure the presence of a defense witness (Claim Two).  (Pet. at 6-9.)

26 Respondent has filed an Answer to the Petition, contending that habeas relief is unavailable

27 because the adjudication of Petitioner's claims by the state courts was objectively reasonable,

28 and has lodged portions of the state court record.  (Doc. Nos. 8, 10.)

Presently before the Court is a Report and Recommendation ("R&R") submitted by United States Magistrate Judge Nita L. Stormes.  (Doc. No. 11.)  The Magistrate Judge recommends granting habeas relief as to Claim One and denying relief as to Claim Two. Respondent has filed Objections to the R&R.  (Doc. No. 16.)

The Court has reviewed the R&R and the Objections thereto pursuant to 28 U.S.C. § 636(b)(1), which provides that: "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

For the following reasons, the Court **ADOPTS IN FULL** the Magistrate Judge's findings and conclusions with respect to Claim Two, and **DENIES** habeas relief as to that claim for the reasons set forth in the R&R.  The Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's findings and conclusions with respect to Claim One, and **DENIES** habeas relief as to that claim for the reasons set forth below.

**I.    Claim One**

Petitioner contends in Claim One that his Sixth and Fourteenth Amendment rights were violated because the prosecutor exercised peremptory challenges to remove the only two African-American jurors in his jury venire. (Pet. at 6-6a.) Specifically, he contends that all three steps of the three-part test set forth in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986) were satisfied because the two jurors, Edmund O. and George O., were members of a cognizable racial group, the prosecutor used peremptory strikes to remove them, and the totality of the circumstances raises an inference that the strikes were motivated by race.  (Pet. at 6a.)  Respondent contends that the state appellate court's determination that there was "substantial evidence to support the trial court's finding of no discriminatory purpose" is objectively reasonable, and habeas relief is unavailable because the adjudication of Petitioner's claim was consistent with clearly established federal law.  (Answer at 5-7.)

The Magistrate Judge found that the determination by the appellate court that the prosecutor provided race-neutral reasons for striking the two jurors was based on an

unreasonable determination of the facts. (R&R at 14-19.) The Magistrate Judge also found that the appellate court's denial of the claim involved an unreasonable application of United States Supreme Court law. (R&R at 19-22.) Respondent objects to these findings, contending that the proper level of deference was not given to the findings of the state courts. (Obj. at 4-10.)

The Supreme Court, in <u>Johnson v. California</u>, 545 U.S. 162 (2005), which was decided on the day the <u>Batson/Wheeler</u>[1] motion was initially heard at Petitioner's trial, stated that the <u>Batson</u> inquiry consists of three steps which "should by now be familiar":

> First, the defendant must make out a prima facie case by showing that the totality of the relevant facts give rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination.

<u>Johnson</u>, 545 U.S. at 168 (internal citations, quotation marks and footnote omitted).

In <u>Johnson</u> the prosecutor exercised peremptory challenges to strike all three of the African-American jurors from the jury panel, and the trial judge did not seek an explanation from the prosecutor. <u>Id.</u> at 164-65. Rather, the trial judge in <u>Johnson</u> "explained that her own examination of the record had convinced her that the prosecutor's strikes could be justified by race-neutral reasons." <u>Id.</u> at 165. Petitioner's case here is similar. The defense objected to the fact that the only two African-American jurors on the panel were removed by the prosecutor, stating that: "I don't see anything they could have found objectionable." (Lodgment No. 2, Reporter's Tr. ["RT"] at 53-54.) The trial judge, just before the evening recess, found that the defense had not satisfied the first <u>Batson</u> step, and stated:

> I'm not going to require [the prosecutor] to make a showing. I believe there was sufficient indiction from both witnesses that gave rise to a peremptory challenge, specifically with [George O.]. I had a substantial difficulty understanding him. I think that probably translated into a difficulty, at least not a sophistication, in

---

[1] Referring to <u>People v. Wheeler</u>, 22 Cal.3d 258 (1978), which predated <u>Batson</u>, where the California Supreme Court held that "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates" the California Constitution. <u>Id.</u> at 276. Because Petitioner cannot establish a basis for habeas relief in this Court based on violations of state law or the state constitution, the Court will analyze his claim under <u>Batson</u>. <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.")

1   understanding English to the extent we are going to need it in this case based upon
2   what I believe to be the potential evidence. . . .  With regard to [Edmund O.],
    made several responses to family members that had criminal history, family
3   members from law enforcement.  Also, there were some issues with regard to
    those facing charges and having been victims of charges.  I think there was
4   sufficient indication that a peremptory challenge was appropriate.  The motion is
    denied.

5   (RT 54.)

6        The defense requested a reconsideration of the <u>Batson</u> motion at the beginning of the

7   court proceedings the next morning on the basis that <u>Johnson</u> had been decided the previous day.

8   (RT 55.)  The Court in <u>Johnson</u> invalidated California's requirement that in order to make out

9   a prima facie case of discriminatory intent the defendant "must show that it is more likely than

10  not the other party's peremptory challenges, if unexplained, were based on impermissible group

11  bias."  <u>Johnson</u>, 545 U.S. at 168.  The Court stated the proper standard as: "a defendant satisfies

12  the requirements of <u>Batson</u>'s first step by producing evidence sufficient to permit the trial judge

13  to draw an inference that discrimination has occurred."  <u>Id.</u> at 170.

14       The trial judge in Petitioner's case indicated that he believed that he had always applied

15  the correct <u>Johnson</u> standard because he had always required the prosecutor to give reasons for

16  peremptory challenges whenever there was an inference of a discriminatory purpose.  (RT 56.)

17  The trial judge stated that he still believed that "there hadn't even been an inference of a

18  discriminatory purpose" in Petitioner's case, and "[t]here were valid reasons that appeared to be

19  obvious to me on the record to support the challenges" irrespective of race, but in "an abundance

20  of caution" allowed the defense to renew the <u>Batson</u> motion.  (RT 56-57.)  The defense replied

21  that:

22           Your honor, first of all, when the court says the manner in which the
         question posed to them was answered, I didn't see anything.  They were both
23       polite, well dressed, well groomed, appearing to be middle-class African-
         American males.  [¶]  Edmund O. did indicate that he had in his family people that
24       were actually victims of gang violence.  He also indicated that he had people in
         his family that were connected to law enforcement.  [¶]  I personally didn't see
25       any race-neutral explanation from what we knew about these two people, which
         wasn't very much, admittedly.  [¶]  I don't think there was – and they were the
26       only two African-American people on the entire panel. So I think with that, there
         is an inference that it was race-based.

27

28  (RT 57.)

-4-

The trial judge then stated that: "I'll reiterate what I said yesterday," and continued as follows:

> The impression I got [from Edmund O.] certainly was that he was born in this country and raised in this country. [¶] The impression I got from [George O.] was – just based upon what I perceived to be a very thick accent, I, at times, had some difficulty understanding him. He probably immigrated to this country and – is of African descent and immigrated to this country. Not the fact that he's Black or immigrated, but the difficulty I had in understanding him, notwithstanding the responses, would, in my mind, probably make him not the appropriate juror for this particular case given the facts of this case. [¶] There are a series of, from what I recall, some relatively complex issues that the jury is going to have to resolve in the matter with regard to the sales of the cars and people coming over and what they were doing. I thought there was a basis for it. . . . I'm going to have the prosecutor go ahead and indicate his thoughts so that we make sure that we cover what <u>Johnson</u> seems to require.

(RT 58.)

The prosecutor then stated:

> With respect to [George O.], I echo the court's thinking on it. That's what I had noted. [¶] Also, in my mind, I had thought – because of the responses that he gave and the way that he gave them, I had trouble understanding him. I felt that English was not his first language, at least it appeared to me to be the case from when he answered questions in court.
>
> Because of the nature of this case, there's going to be a lot of – I think the court is right on that. There's going to be a lot of terminology. This case is going to be a lot based on street slang terms regarding the Mexican Mafia that I think it's going to be difficult for someone who English is not their first language to maybe get up to speed on that and maybe comprehend that as much as a person who does not have a language difficulty. That was the primary reason I kicked him. [¶] The other reason was that I just didn't get a feeling from him. I didn't hear a lot from him as far as someone who stood out to me as someone who would be a good juror for me. [¶] The other people – and I think there are cases – I don't have them off the top of my head, but there are cases that state that it's a proper reason. I had people behind him that were – that I wanted to get on to the jury more, people that I felt would be better jurors. I think that's a proper reason in and of itself, although not the primary reason, as I stated before. The primary reason was the language barrier.
>
>              * * *
>
> The big thing I noted with [Edmund O.] was that while he did have relatives in law, he had three cousins, I think, that were murdered. And then when we explored that more in depth with him, he actually said he had family members that were Crips. [¶] To me, just the nature of this case and the fact that he's had such close ties with the issues that are going to surround this case, being that he had family members who were murdered and that he had family members who were Crips – and my understanding from it, the inference that I drew was that the murders and the family members who were Crips were somehow related. That may have been an inference that I drew, but it was one that I drew. There was a relation. These weren't completely separate incidents.

1         And so based on those things, I felt – he also stated – I noted that he said
2    that the cops knew who did it.  And he obviously didn't – I don't think he
      expressed animosity towards the police.  I didn't get that feeling.  But I just
      thought that added into sort of the whole picture as someone who was just not
3    right for this case.  [¶]  In addition, I would note the order of these two men.  And
      I think that is another factor to consider.  They were seated right next to each other
4    in line.  It's true that they were the only two African-American men on the panel.
      But had one been No. 1 and the other been No. 50, I think it was basically because
5    they were next to each other that then obviously they are in a position where they
      are going to get – they are ripe for going to be kicked.  Had one been No. 50, I
6    don't think we would have ever gotten to that issue.

7    (RT 58-61.)

8         Defense counsel and the trial judge then had the following exchange:

9    Defense:    Your Honor, first of all, [George O.], I personally had no problem understanding
      [George O].  It may be because I have an accent as well.
10

11   The Court:   No.

12   Defense:    And certainly someone having an accent, I don't think that's a legitimate reason
      for exercising a peremptory.   [¶]  There were absolutely no questions asked by
13   anyone as to whether he had sufficient command of the English language.  So we
      really don't know about that.  We are drawing conclusions.  The prosecution and
      the court is [sic] drawing conclusions from his accent.  [¶]  I would point out that
14   an accent does not necessarily indicate that the person doesn't have a command
      of the language or doesn't understand.  [¶]  In regards to –
15

16   The Court:   Let's say, for example, that you are right and [the prosecutor] is mistaken in that
      assumption; that it's an incorrect assumption.  I don't believe that it was in this
17   particular case.  But for the sake of argument, let's say that it was an incorrect
      assumption.  [¶]  Does that mean that because he exercises the challenge based
      upon a good faith belief that that's what would take place, that he should be
18   penalized for it with the loss of the panel that was picked?  I don't think that, in
      and of itself, smacks of a discriminatory reason in the rejection.
19

20   Defense:    Your Honor, it would appear to me if he had been concerned about that, he would
      have asked some questions about that.

21   The Court:   Okay.

22   Defense:    In regards to [Edmund O.], again, there was certainly no animosity towards law
      enforcement that was expressed.  The fact that he had both family members who
23   were murdered and family members that were gang members, I think that cancels
      each other out.  [¶]  The man was, I believe, a school custodian for a long period
24   of time.  I believe his brother-in-law is in law enforcement.  His friend's daughter
      is a police officer.  He's holding a city job.  I don't think that's the type of person
25   that would be hostile to the prosecution's arguments.  [¶]  Again, not enough
      questions were asked of him; what his feelings are, whether or not he could given
26   an impartial consideration of the evidence relating to gangs in this case.  So I still
      submit that the challenges were made improperly, in violation of <u>Batson</u>.  [¶]  The
27   fact that they were sitting next to each other, they were drawn at random.  I don't
      see how that adds anything to the prosecution's argument.
28

      The Court:   Thank you.  [¶]  The motion is denied.  (RT 61-62.)

-6-

1   Thus, the trial court found that the defense had not satisfied the first step of the <u>Batson</u>

2   inquiry because counsel had not shown a prima facie case of discrimination, but allowed the

3   prosecutor to state his reasons on the record out of an abundance of caution.  The appellate court,

4   following a lengthy discussion, agreed that no prima facie case had been shown, concluding that:

5   > Based on the trial court's assessment that race-neutral reasons for the
6   > exclusion were obvious, combined with the lack of racial ties between the excused
    > jurors, the defendant, and the victim, there is substantial evidence to support the
    > trial court's finding that Corona did not make a prima facie showing of
7   > discriminatory purpose.[2]

8   (Lodgment No. 7, <u>People v. Corona</u>, No. D047501, slip op. at 15 (Cal.Ct.App. Oct. 26, 2006).)

9   The appellate court alternately found, after a lengthy discussion, that, assuming a prima

10  facie case had been presented:

11  > We conclude the trial court made a sincere and reasoned effort to evaluate
    > whether the peremptory challenges were exercised for race-neutral reasons, and
12  > there is substantial evidence to support the trial court's finding of no
    > discriminatory purpose.

13

14  (<u>Id.</u> at 18.)

15  The Magistrate Judge correctly found, citing <u>Hernandez v. New York</u>, 500 U.S. 352, 359

16  (1991), that the first step of the <u>Batson</u> inquiry was rendered moot when the prosecutor provided

17  race-neutral reasons for exercising his strikes and the trial judge ruled on the ultimate issue of

18  intentional discrimination.  (R&R at 13.)  The Court adopts this finding and will move on to the

19  second <u>Batson</u> step.

20  The second <u>Batson</u> step requires that "once the defendant has made out a prima facie case,

21  'the burden shifts to the State to explain adequately the racial exclusion' by offering permissible

22  race-neutral justifications for the strikes."  <u>Johnson</u>, 545 U.S. at 168, quoting <u>Batson</u>, 476 U.S.

23  at 94.  The Magistrate Judge found that the second <u>Batson</u> step had been satisfied because the

24  prosecutor gave facially race-neutral reasons for exercising both peremptory strikes.  (R&R at

25  14.)  For the following reasons, the Court adopts these findings.

26

27      [2] The appellate and trial courts recognized, as does this Court, that although Petitioner, who is
    Hispanic, was not the same race as the two African-American jurors, that distinction does not prevent
28  him from presenting a <u>Batson</u> challenge.  <u>Powers v. Ohio</u>, 499 U.S. 400, 415 (1991). Rather, it is one
    factor to be considered both in determining whether a prima facie case has been made and whether the
    prosecutor ultimately engaged in wrongful discrimination.  <u>Id.</u> at 416.

07cv2117

Petitioner here was found guilty of attempted murder for the benefit of a street gang. (Lodgment No. 7, <u>People v. Corona</u>, No. D047501, slip op. at 1.)  Evidence was presented that Petitioner was a gang member who shot another gang member five times at close range at the behest of the Mexican Mafia gang leadership in connection to a drug debt.  (<u>Id.</u> at 2-4.)  The Magistrate Judge correctly found that the reasons for striking Edmund O. were facially race-neutral.  As set forth above, the prosecutor indicated that Edmund O. had informed the court that he had three cousins who had been murdered, and had family members who belonged to the Crips street gang.  In addition, Edmund O. said he had been told by the police that they knew who had murdered his family members but did not have sufficient evidence to bring charges, and the prosecutor drew an inference that the murders were somehow related to the family's gang membership.  The Court adopts the Magistrate Judge's finding that the prosecutor offered facially race-neutral reasons for challenging Edmund O., satisfying the second <u>Batson</u> step.

The prosecutor indicated that the "primary" reason he struck George O. was due to a perceived difficulty in understanding English coupled with the fact that the case involved street slang and gang terminology.  (RT 58-59.)  The prosecutor also indicated that: "I didn't hear a lot from him as far as someone who stood out to me as someone who would be a good juror for me," and indicated there were other jurors on the panel behind George O. he preferred.  (RT 59.)  As set forth in the R&R, case law supports a finding that difficulty with language has been held to be a valid race-neutral reason to exercise a peremptory strike.  (R&R at 14.)  The Court adopts the finding of the Magistrate Judge that the prosecutor offered facially race-neutral reasons for challenging Edmund O., and that the second <u>Batson</u> step was satisfied.

The third <u>Batson</u> step provides that "'[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.'"  <u>Johnson</u>, 545 U.S. at 168, quoting <u>Purkett v. Elem</u>, 514 U.S. 765, 767 (1995).  "[A] federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the <u>Batson</u> challenge."  <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006).  "[A] state court's finding of the absence of discriminatory intent is 'a pure issue of fact' accorded significant deference," which "is necessary because a reviewing court, which

analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations."   Miller-El v. Cockrell, 537 U.S. 322, 339 (2003).   "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."   Id. at 340.

The Magistrate Judge found that the state court's determination that the prosecutor did not act out of a discriminatory purpose was based on an unreasonable determination of the facts, and separately concluded that the appellate court's adjudication of Petitioner's Batson claim involved an unreasonable application of clearly established federal law.   (R&R at 14-22.) Because Respondent has objected to these findings and conclusions, the Court will conduct a de novo review of these portions of the R&R.   For the following reasons, the Court declines to adopt the findings and conclusions of the Magistrate Judge with respect to the third Batson step, and finds that habeas relief is not available as to Claim One.

**a) Unreasonable determination of the facts**

The Magistrate Judge found that the appellate court's conclusion that the prosecutor and trial judge drew legitimate inferences from George O.'s accent that he lacked proficiency in the English language was based on an unreasonable determination of the facts.   (R&R at 15.)   The Magistrate Judge noted that a thick accent does not automatically translate into lack of language proficiency, and that the record here supports the opposite conclusion, that George O. was proficient in English.   (Id.)   This finding was based on his grammatically correct responses on voir dire, the lack of pauses in the proceedings or requests by the court reporter to repeat answers, the fact that he was employed in the manufacturing field which established that he could speak and understand English sufficiently to hold a job, and "most importantly" because no one inquired into his English proficiency.   (Id. at 15-16.)   Thus, the Magistrate Judge found there were no objective, factual grounds in the record to support the finding that the strike appropriately rested on an inability to speak or understand English.   (Id.)

Respondent objects to these findings, contending that both the trial judge and the prosecutor had difficulty understanding George O., and therefore the problem was self-evident,

not requiring additional inquiry.  (Obj. at 5.)  Relying on <u>Hernandez v. New York</u>, Respondent contends that this Court should not substitute its judgment for the judgment of the trial and appellate courts where, as here, there was nothing inherently discriminatory about the stated reasons.  (<u>Id.</u>, citing <u>Hernandez</u>, 500 U.S. at 360 (stating, with respect to step two of the <u>Batson</u> inquiry, that "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral.").)  The passage cited to by Respondent from <u>Hernandez</u> does not apply with respect to the third <u>Batson</u> step, where "a court must undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" <u>Batson</u>, 476 U.S. at 93, quoting <u>Arlington Heights v. Metropolitan Housing Development Corp.</u>, 429 U.S. 252, 262 (1977).  With respect to the third step, the Court may consider any "relevant circumstances" which bear on the issue of whether the prosecutor used the peremptory challenges with a racially discriminatory intent.  <u>Batson</u>, 476 U.S. at 96.

The entirety of the statements George O. made in court were his brief oral answers to the written voir dire questions, which had been orally answered by 24 jurors before him:

Prospective Juror [George O]:

    Manufacturing.
    Single.
    No children.
    No prior jury duty
    No friends in law enforcement and legal profession
    I think I can be fair.

(Lodgment No. 3, Augmented RT. at 44.)

The experienced trial judge here indicated that, based on what he perceived to be a thick accent, he had difficulty understanding George O.  (RT 58.)  The judge explained that "the difficulty I had in understanding him, <u>notwithstanding the responses</u>, would, in my mind, probably make him not the appropriate juror" in a case with "relatively complex issues that the jury is going to have to resolve . . ." (<u>Id.</u>) (emphasis added).  Thus, the record indicates the trial judge took into consideration George O.'s "grammatically correct" responses to the voir dire questions when drawing the inference.  Likewise, the prosecutor drew his inference that George O. would have difficulty understanding from the content and manner in which the responses

-10-

07cv2117

were given, stating that: "because of the responses he gave and the way that he gave them, I had trouble understanding him."  (RT 58-59.)  The prosecutor, arguably not in a position to judge the juror's grammar, stated that: "This case is going to be a lot based on street slang terms regarding the Mexican Mafia that I think it's going to be difficult for someone who English is not their first language to maybe get up to speed on that and maybe comprehend that as much as a person who does not have a language difficulty."  (RT 59.)

The appellate court stated:

> We defer to the trial court's assessment that George O.'s strong accent was readily apparent and made him difficult to understand; thus, the prosecutor could draw inferences from this fact without further questioning.  The prosecutor is not required to present reasons that rise to the level of a challenge for cause, and could reasonably decide to peremptorily challenge a juror whose English was difficult to understand without further inquiry about his English language ability.

(Lodgment No. 7, <u>People v. Corona</u>, No. D047501, slip op. at 16-17.)

The cold record here cannot adequately convey the circumstances which were present in the courtroom which gave rise to the trial judge's finding that the prosecutor's motive in challenging George O. was genuinely race-neutral, as this Court "is not as well positioned as the trial court is to make" that determination.  <u>Miller-El</u>, 537 U.S. at 339.  If this Court were sitting as an appellate court, it might find that the prosecutor should have been required to determine the extent of George O.'s language ability.  <u>See</u> <u>United States v. Changco</u>, 1 F.3d 837, 840 (9th Cir. 1993) ("So long as the prosecutor (or the defendant, for that matter) can convince the district court that the potential juror who is being struck *in fact* has difficulty with English, the justification is race-neutral.").  However, as the Court in <u>Hernandez</u> noted:

> Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in <u>Batson</u>, the finding "largely will turn on evaluation of credibility."  476 U.S. at 98, n. 21.  In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.  There will seldom be much evidence bearing on that issue, *and the best evidence often will be the demeanor of the attorney who exercises the challenge*.  As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." <u>Wainwright v. Witt</u>, 469 U.S. 412, 428 (1985), citing <u>Patton v. Yount</u>, 467 U.S. 1025, 1038 (1984).

<u>Hernandez</u>, 500 U.S. at 365 (emphasis added).

The present case is one where the genuineness of the prosecutor's motive with respect to George O. "lies peculiarly within a trial judge's province," and the "best evidence [is] the demeanor of the [prosecutor]." <u>Id.</u>  The failure to inquire into George O.'s command of the English language, which may have justified the prosecutor's inference, refuted it or left the issue unresolved, is simply one factor to consider in determining whether the prosecutor's motive in exercising the peremptory challenge was motivated by race.  <u>Purkett</u>, 514 U.S. at 769 (noting that while <u>Batson</u> step two looks to the <u>reasonableness</u> of the asserted nonracial motive, step three turns on the <u>genuineness</u> of the motive).  As set forth above, defense counsel argued at the <u>Batson</u> motion that there had not been an adequate inquiry into George O.'s proficiency in English, and that if it was a legitimate concern he would have expected the prosecutor to conduct a further inquiry.  (RT 61-62.)  The trial judge disagreed that the prosecutor had made an incorrect assumption regarding George O.'s English proficiency, but took that possibility into consideration when making his finding that the prosecutor had a genuinely non-racial motive.  (RT 61-62.)  The lack of further inquiry was also identified as a valid factor for consideration in the third <u>Batson</u> step by the appellate court.  (Lodgment No. 7, <u>People v. Corona</u>, No. D047501, slip op. at 16-17.)

Thus, the trial and appellate courts considered the lack of further inquiry into George O.'s English proficiency before ruling on the ultimate issue of discriminatory intent.  The fact that the prosecutor did not inquire further into George O.'s proficiency in English, but based his inference on George O.'s thick accent, which even the trial judge found difficult to understand, does not provide sufficient evidence to rebut the state courts' findings regarding the <u>genuineness</u> of the prosecutor's motives.  Although it is one factor to be considered, it is not strong enough, either standing alone or in conjunction with the other factors this Court must consider, which includes the fact that Petitioner was not the same race as the challenged jurors, to support a conclusion that it "was unreasonable to credit the prosecutor's race-neutral explanations for the <u>Batson</u> challenge." <u>Rice</u>, 546 U.S. at 338.  Even assuming the Magistrate Judge is correct that the cold transcript of George O.'s brief voir dire establishes a proficiency in English, or that the prosecutor drew an incorrect assumption in that regard, it is the trial judge's <u>credibility</u>

determination, to which the appellate court deferred based on the trial judge's "sincere and reasoned effort to evaluate whether the peremptory challenges were exercised for race-neutral reasons," (id. at 18), which is entitled to deference, and to which this Court "is not as well positioned as the trial court is to make." Miller-El, 537 U.S. at 339. The fact that reasonable jurists can disagree on this issue is further support for a finding that the state appellate court did not base its decision on an objectively unreasonable determination of the facts.

Although the lack of further inquiry into George O.'s English proficiency was the "most important" factor considered by the Magistrate Judge in demonstrating that the appellate court based its decision on an unreasonable determination of the facts, the R&R also found a lack of support for the prosecutor's stated reason that George O. would have trouble understanding gang terminology and street slang since the prosecutor indicated that all the jurors were going to be presented with expert testimony in order to understand the complex issues in the case related to street slang. (R&R at 16.) Respondent objects to this finding, contending it fails to acknowledge a difference between explaining confusing terminology and truly understanding the subtleties involved in a language, a distinction which sometimes requires a translator to be in court even when a witness has a working understanding of the relevant language. (Obj. at 5-6.)

The introduction of expert witness testimony, particularly with respect to gang culture, has been acknowledged as important to assist juries for reasons independent from considerations of language ability. Briceno v. Scribner, 555 F.3d 1069, 1077 (9th Cir. 2009), citing People v. Olguin, 31 Cal. App. 4th 1355, 1371 (1994) ("The requirements for expert testimony are that it relate to a subject sufficiently beyond common experience as to assist the trier of fact . . ."). The necessity to present expert testimony regarding gang culture and slang was due to an expected lack of sophistication of the jurors with gang culture, something common to all jurors. That concern was compounded by George O.'s perceived lack of sophistication with the English language which would make it more difficult for him to understand that information. This factor does not support a finding of pretext, and the Court declines to adopt the Magistrate Judge's finding in this regard.

The Magistrate Judge also found pretext arising from the other reason the prosecutor gave for striking George O., namely, that: "that I just didn't get a feeling from him.  I didn't hear a lot from him as far as someone who stood out to me as someone who would be a good juror for me." (RT 59.)  The Magistrate Judge found that this reason was "both without tangible support in the record and unbelievable," because there were no additional questions asked of George O. regarding his beliefs and experiences.  (R&R at 16.)  It is true that there were no follow-up questions asked of George O. following his initial responses that he worked in manufacturing, was single without children, had no prior jury experience and no friends in law enforcement, and thought he could be fair.  (Lodgment No. 3, Augmented RT at 44.)  However, the lack of follow-up questions to George O. does not support a finding of racially discriminatory motive for the reasons discussed above.  In addition, the prosecutor was entitled to rely on his "feeling" regarding George O.'s ability to serve as a juror based on the answers given to the written voir dire questions.  Burks v. Borg, 27 F.3d 1424, 1429 & n.3 (9th Cir. 1994) (noting that prosecutor's evaluation of a juror's demeanor, tone, and facial expression may lead to a "hunch" or "suspicion" that the juror might be biased, and that a peremptory challenge based on this reason would be legitimate.), citing, J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 148 (1994) (O'Connor, J., concurring) ("[A] trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses, derived from a juror's responses at voir dire or a juror's 'bare looks and gestures.'"); United States v. Bauer, 84 F.3d 1549, 1555 (9th Cir. 1996) ("Peremptory challenges are based upon professional judgment and educated hunches rather than research.").  The fact that the prosecutor expressed a feeling that George O. would not be a good juror for him based on what he heard on voir dire without inquiring further does not, alone or in conjunction with the other factors, support a finding of pretext, and the Court declines to adopt the Magistrate Judge's findings and conclusions in this regard.

Respondent also objects to the finding and conclusions in the R&R that Ninth Circuit authority, namely Green v. Lamarque, 532 F.3d 1028 (9th Cir. 2008), Kesser v. Cambra, 465 F.3d 351 (9th Cir. 2006) and McClain v. Prunty, 217 F.3d 1209 (9th Cir. 2000), support a finding that the prosecutor's proffered reasons were pretextual.  (Obj. at 6.)  These cases are

distinguishable from Petitioner's case because they either involve instances where the prosecutor offered reasons which did not exist, see Kesser, 465 F.3d at 363-65; McClain, 217 F.2d at 1221-22, involved overtly race-based reasons, see Kesser, 465 F.3d at 362, involved internally inconsistent reasons, id. at 367, or involved situations where comparative analysis demonstrated obvious pretext, see Green, 532 F.3d at 1031-33; Kesser, 465 F.3d at 362-71; McClain, 217 F.3d at 1221-23.  Here, the fact that George O. was difficult for the trial judge and the prosecutor to understand due to his thick accent is established by the record, and as set forth above is facially race-neutral.  The inference drawn from that fact that George O. had a thick accent, namely, that English was probably not George O.'s first language and he might have difficulty understanding and making himself understood, is not in any manner overtly racist.  The Magistrate Judge's finding that these cases support habeas relief was based on the earlier finding, which the Court has declined to adopt, that the failure to inquire into George O.'s proficiency in English demonstrated that the prosecutor's stated reason that he would have difficulty understanding English sufficiently to serve as a juror was a pretext.  However, for the reasons discussed above, the Court finds that evidence to be insufficient to satisfy Batson's third step.  The Court declines to adopt the Magistrate Judge's finding that the state appellate court's adjudication of Claim One was based on an unreasonable determination of the facts.

**B)  Unreasonable application of clearly established federal law**

The Magistrate Judge found that the appellate court's adjudication of Claim One involved an unreasonable application of Batson and its progeny.  (R&R at 19-22.)  Respondent has objected to this finding, and the Court will conduct a de novo review of this portion of the R&R.

The Magistrate Judge found that the order in which the trial judge took the Batson steps was contrary to Batson and its progeny, and the appellate court's failure to recognize the trial court's mistake in that regard amounted to an unreasonable application of clearly established federal law.  (R&R at 19.)  The Magistrate Judge found the trial judge erred when he sua sponte stated that George O.'s accent, and the inference of a lack of English proficiency drawn from it, was a sufficient reason for the prosecutor's strike before ruling on whether a prima facie case had been made or before asking the prosecutor to provide a reason.  (Id.)  The Magistrate Judge

also found that the appellate court impermissibly substituted the reasons given by the trial judge for the reasons given by the prosecutor.  (Id.)  As set forth above, the trial judge, in response to the defense Batson motion, indicated that the defense had not made a prima facie showing of discrimination because there were obvious race-neutral reasons in the record as to why the two jurors were struck.  (RT 54.)  The judge, therefore, did not require the prosecutor to state his reasons for exercising the peremptory strikes.  (Id.)  Upon reconsideration of the motion the day after Johnson was decided, the trial judge reiterated his finding regarding lack of a prima facie case.  (RT 57-58.)  Out of an abundance of caution, however, the trial judge proceeded as if a prima facie case had been stated and invited the prosecutor to state his reasons for the challenges on the record, and then denied the motion after hearing from the defense.  (RT 58-62.)  It therefore appears that the Batson steps were taken in the proper order.

Even if the steps were taken out of order, it is clearly established that the order of taking the Batson steps is not rigid.  Rather, the Supreme Court has held that a prosecutor who gives reasons without being asked to do so by the trial judge merely renders step one moot. Hernandez, 500 U.S. at 359 ("This departure from the normal course of proceeding need not concern us.")  There is no clearly established federal law which prevents the trial judge, when stating the reasons why no prima facie case has been shown, from articulating reasons why a peremptory challenge may have been motivated by reasons other than race.  The Ninth Circuit's opinion in Paulino v. Castro, 371 F.3d 1083 (9th Cir. 2004), cited in the R&R as holding that the procedure used by the trial judge in this case is an unreasonable application of Supreme Court law (R&R at 19), does not support a finding that clearly established federal law was transgressed in this respect.  The court in Paulino refused to defer to the appellate court's finding that there was no prima facie showing of bias, and conducted a de novo review of the issue, because the state appellate court had applied the standard rejected in Johnson.  Paulino, 371 F.3d at 1090. The court found that the defendant, who was Black, had in fact made out a prima facie case of discrimination based on statistical disparities where five of the prosecutor's six peremptory challenges were used to remove five of the six Black jurors on the panel, and held that the trial court erred in relying on its own speculation as to what might have been the prosecutor's reasons

and never requiring the prosecutor to explain her actual motivations for the challenges.  Id. at 1090-92.  The Paulino court remanded the case to the district court for a hearing in order to permit the state "an opportunity to present evidence as to the prosecutor's race-neutral reasons for the apparently-biased pattern of peremptories, and determine whether the prosecutor violated Batson."  Id. at 1092.  Thus, the Paulino court never actually found a Batson violation, and that case supports the proposition that the strict order of the Batson steps are sublimated to the ultimate determination of whether the prosecutor acted with racially discriminatory intent.  The Magistrate Judge's finding in this regard was understandably based on the previous finding, which the Court has declined to adopt, that the prosecutor acted with a racially-discriminatory motive when challenging George O.  The Court also declines to adopt this finding.

The Magistrate Judge found that the failure of the state courts to adequately investigate the unsupported reason for George O.'s strike, as required by Batson's third step, combined with the questionable strike of Edmund O., the only other African-American on the panel, was an unreasonable application of Batson.  (R&R at 19-20.)  In addition, the Magistrate Judge found that when the strikes of George O. and Edmund O. are considered together, the reasons appear even more pretextual, and the appellate court erred in failing to consider the two jurors together.  (Id. at 20-21.)  Respondent objects to these findings, contending that an independent analysis of the two jurors was proper because the state court clearly found that the strikes were not racially motivated and had no occasion to discuss them in conjunction, other than its general obligation under Batson to consider all the relevant circumstances.  (Obj. at 9.)

The appellate court noted the correct legal standard for analyzing Batson claims, and discussed both jurors when determining whether there was racial discrimination.  (Lodgment No. 7, People v. Corona, No. D047501, slip op. at 9-17.)  The appellate court was aware that the only two African-American jurors on the panel were struck, noting that it was what prompted defense counsel to bring the Batson motion.  (Id. at 6.)  The appellate court's finding that neither juror was dismissed for racially motivated reasons was objectively reasonable and supported by the record, and the race-neutral reasons provided for the challenge to each juror were specifically tailored to the individual jurors and were entirely dissimilar.  There being no connection between

1    the two challenges, other than the race of the jurors which was taken into consideration, the

2    appellate court was not obligated to discuss the effect of one challenge on the other.  The

3    Magistrate Judge's finding in this regard was based on the previous finding, which the Court has

4    declined to adopt, that the prosecutor acted with a racially-discriminatory motive when

5    challenging George O., and the Court also declines to adopt this finding.

6         The Magistrate Judge next found that the comparative analysis conducted by the appellate

7    court between Edmund O. and Juror No. 11 was flawed because there was no evidence to

8    support the prosecutor's inference of a relationship between Edmund O.'s murdered cousins and

9    their gang membership.  (R&R at 21.)  Respondent objects to this finding on the basis that it

10   substitutes the judgment of this Court on this issue for that of the state court.  (Obj. at 9.)

11        The appellate court stated:

12            Juror No. 11 and Edmund O. were not similarly situated so as to show that
         the prosecutor excused Edmund O. because of his race.  Edmund O., unlike Juror
13       No. 11, had experienced the murders of three cousins, and law enforcement had
         failed to prosecute those responsible for the murders.  Even though Edmund O.
14       stated this experience would not bias him, the prosecutor was entitled to reject this
         statement and decide not to risk keeping a juror who might have some resentment
15       towards law enforcement. Given Edmund O.'s family history involving gangs and
         murders, the trial court could reasonably credit the prosecutor's overall assessment
16       that Edmund O. was not a desirable juror for the prosecution because he had
         experiences too closely associated with the circumstances of the current case.  The
17       fact that Juror No. 11 also had family ties to gangs does not override the trial
         court's conclusion the prosecutor was not setting forth sham reasons regarding
18       Edmund O.

19   (Lodgment No. 7, People v. Corona, No. D047501, slip op. at 18.)

20        In response to defense counsel's question to the jurors as to whether their experience with

21   gang activity would make it more likely for them to convict, Juror No. 11 stated:

22
     Juror No. 11:        I just have uncles and cousins who are involved or who were gang
23                        members.  But nothing really like – they had been incarcerated.

24   Defense Counsel:     Were any of them involved in any National City Gangs?

25   Juror No. 11:        Yes.  One cousin.

26   Defense Counsel:     Does your experience with your cousins, does that – do you think that that
                          will affect your decision as to whether or not it was Mr. Corona that
27                        committed this offense?

28   Juror No. 11:        I believe not.

| | | |
|---|---|---|
| Defense Counsel: | You are pretty sure about that? |
| Juror No. 11: | Yes. |

(Lodgment No. 3, Augmented RT at 87.)

Edmund O. responded to that question as follows:

| | |
|---|---|
| Edmund O.: | My mother had some property and had gang activity.  They sent her a note from the city.  Basically, she was compelled to sell the property because she couldn't control what was happening on her property.  It was because of gangs. |
| Defense Counsel: | Did she have to sell at a loss? |
| Edmund O.: | She got market value, but gang activity depressed the market value. |
| Defense Counsel: | Anything else? |
| Edmund O.: | I have two cousins who were in the Crips. |
| Defense Counsel: | The fact that – if you hear that Mr. Corona is a gang member, would that automatically cause you to convict? |
| Edmund O.: | No. |
| Defense Counsel: | Would that by itself lighten the prosecution's burden of proving that it was Mr. Corona who committed this act? |
| Edmund O.: | No. |

(Id. at 85.)

The trial judge asked all the jurors whether they had friends or relatives who had been victims of attempted murder, assault with a firearm, or any crime involving the use of a firearm. (Id. at 63.)  Juror No. 11 did not report any such incidents.  However, with respect to Edmund O., the following exchange took place:

| | |
|---|---|
| The Court: | When did the incident take place, sir? |
| Edmund O.: | About 10 years ago. |
| The Court: | Was it reported to an investigating agency? |
| Edmund O.: | Yes. |
| The Court: | Was a case filed on the matter? |
| Edmund O.: | Not enough evidence.  But I had three cousins murdered. |
| The Court: | At the same time? |

-19-

| | | |
|---|---|---|
| Edmund O.: | No.  Different.  One of them was – had a cousin and daughter killed and another cousin. |
| The Court: | You said there wasn't enough evidence.  They didn't know who did it? |
| Edmund O.: | The detectives met with us and told us who did it, but they said they couldn't bring it forth. |
| The Court: | Where did this take place? |
| Edmund O.: | San Diego. |
| The Court: | How do you feel about that decision that law enforcement made in the case that they couldn't go forward?  Besides being disappointed, did you see their point or did you think there was plenty of evidence to go forward? |
| Edmund O.: | No, they didn't have no witnesses.  They said they couldn't make a case, but they knew who did it. |
| The Court: | Anything about that situation that you feel would prevent you from acting as a fair juror in our case? |
| Edmund O.: | No. |
| The Court: | Do you think you could set aside any opinions, attitudes, feelings that might have been generated in that case and decide Mr. Corona's matter solely upon the evidence I present to you? |
| Edmund O.: | I believe so.[3] |

(Id. at 68-69.)

The jurors were also asked if they had friends or relatives in law enforcement, and Juror No. 11 answered that he did not.  (Lodgment No. 3, Augmented RT at 47.)  Edmund O., however, indicated that: "I have two cousins in law enforcement.  One worked in the prison and one worked in the police department.  Both of them are dead.  I also have a cousin that works in the Chicago Police Department as a detective." (Id. at 44.)

---

[3]  The Magistrate Judge found that there was no support in the record for the prosecutor's inference that there was a connection between the murders in Edmund O.'s family and his family members who were involved in gangs.  (R&R at 21.)  Although the cold voir dire transcript appears to bear this out (all relevant remarks made by Edmund O. during voir dire are set forth above), it appears that defense counsel drew the same inference, as she stated during the Batson motion that: "[Edmund O.] did indicate that he had in his family people that were actually victims of gang violence."  (RT 57.)  The Court does not need to determine whether this was a reasonable inference because the appellate court did not consider it when addressing this aspect of Petitioner's claim.  (See Lodgment No. 7, People v. Corona, No. D047501, slip op. at 19.)  However, this is an excellent example of why the Supreme Court has cautioned against relying too heavily on voir dire transcripts in the Batson context. Hernandez, 500 U.S. at 364.

The two jurors were not sufficiently similarly situated so as to draw an inference that the prosecutor was acting with a racially discriminatory purpose when he challenged Edmund O. but not Juror No. 11.  Although both jurors had relatives involved in gangs, Juror No. 11 reported no involvement with the authorities with respect to his relatives, and no relatives who had been the victim of gun-related violence.  Edmund O. reported that his mother had to sell property due to gang activity.  Edmund O. also stated that he had three cousins who were murdered and that the authorities knew who the killers were but did not prosecute.  Edmund O. also had several relatives in law enforcement whereas Juror No. 11 had none.  The appellate court's finding that "Edmund O.'s family history involving gangs and murders" was  sufficient to distinguish him from Juror No. 11 for comparative analysis purposes is not objectively unreasonable.  Even if one might speculate that certain aspects of Edmund O.'s background might make him more favorable to the prosecution than Juror No. 11, that alone does not upend the entirety of the trial judge's and the California Court of Appeal's conclusions that the prosecutor's exercise of peremptories was not racially motivated.  This Court holds that the state court's decision is far from unreasonable and was in fact a reasonable determination of the facts and application of Supreme Court law.  Therefore, habeas relief cannot be granted on Claim One.

**II.     Claim Two**

The Court adopts in full the findings and conclusions of the Magistrate Judge with respect to Claim Two, to which there are no objections.  Habeas relief is **DENIED** as to Claim Two for the reasons set forth in the R&R.

///

///

///

///

///

///

///

-21-

07cv2117

**III.     Conclusion and Order**

        The Court **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the findings and conclusions of the Magistrate Judge as set forth in this Order, and **DENIES** the Petition for a writ of habeas corpus.  The Court **ISSUES** a Certificate of Appealability as to all claims presented in the Petition.  The Clerk shall enter judgment accordingly.

        **IT IS SO ORDERED.**

DATED:  October 5, 2009

                                                Honorable Barry Ted Moskowitz
                                                United States District Judge

07cv2117